## O'Leary v. Fargher.

11 225
29 361

APPEAL IN EQUITY—TRIAL.—Upon an appeal from a decree in equity the case is tried anew upon the evidence accompanying the transcript, without regard to the findings of fact at the trial below, whether made by the lower court itself, or by a referee appointed by it for that purpose; overruling *Fahie* v. *Lindsay*, 8 Or., 474.

APPEAL from Wasco County.

*Hill & Mayo*, for appellant.

*L. L. McArthur* and *J. C. Moreland*, for respondent.

By the Court, WATSON, C. J.:

The decree appealed from was entered upon the report of a referee as modified by the court. The appellant contends, upon authority of *Fahie* v. *Lindsay*, 8 Or., 474, that the lower court was not justified in modifying the referee's report; that such report as to the facts had the force of a special verdict under sections 226 and 397 of the Code, on the motion to set aside, and that some effect must be accorded it on the trial in this court. But whatever effect such a report in a suit in equity should be held to possess on the trial in the lower court, we are satisfied that it cannot be treated as a special verdict upon the facts at the trial of the cause on appeal to this court. To do so would violate the positive requirements of section 533 of the Code, that "upon an appeal from a decree given in any court the suit shall be tried anew upon the transcript and evidence accompanying

it." The determination of facts by the referee is simply a part of the trial in the lower court, and it is impossible to regard it as any element of the new trial in the appellate court which the statute has provided for. The appellate court will not disturb the finding of a referee which is not in conflict with the preponderance of evidence, nor will it reverse a decree of the lower court unless error is made to appear affirmatively; but the presumption of regularity in support of the proceedings of the inferior tribunal extends no further than this. And we think the language of the court in the case referred to, that a decree in a suit in equity, based upon a referee's report, will not be reversed in the appellate court "unless the findings of the referee are clearly against the weight of testimony," is much stronger than the provisions of our code for appeals in equity cases will warrant. In our view of the statute, an equity case is to be tried over again in the appellate court upon every issue, both of law and fact, not waived in the lower court, and without regard to the result of the previous trial, whether had altogether before the court or partly before a referee.

As to the facts established by the proofs in the case, our conclusion differs from that of the lower court in one particular only: we think it appears quite plainly that appellant was to pay one-half of the first year's interest on the Gray note, amounting to $180. His written agreement with Cronin, the former partner of the respondent, shows this upon its face. And besides, no reasonable explanation of the transaction is possible upon the opposite theory. The respondent, O'Leary, and Cronin had been partners in raising sheep, and owned quite a large flock together. The appellant, Fargher, bought Cronin's interest, and in consideration thereof agreed with Cronin to assume jointly with O'Leary certain debts against the old firm. The Gray note

was due from O'Leary to Cronin. The written agreement between Fargher and Cronin recites that the payment of this note, with the interest thereon, is assumed by Fargher jointly with O'Leary as part of the consideration. And it appears from all the facts and circumstances in proof that Cronin was to be relieved entirely from further liability on account of debts of the old partnership, in consideration of his transfer of his interest in the property and business to Fargher. Cronin was liable for one-half of the first year's interest on said note, and it is not to be credited, without clear proof of the fact, that O'Leary released him from his obligation to pay his share of it without some arrangement with Fargher to step into his place and become liable for his share of the debt. No consideration for O'Leary's assumption of Cronin's share of this debt is shown, nor has any reason been given why he should have been willing to release Cronin without making Fargher liable in his stead. We think Fargher must be held, therefore, to have assumed Cronin's share of this indebtedness.

The matter of fact with respect to which we differ with the lower court is the amount due Fargher on the Voght and Collenburg bill against the firm of O'Leary & Fargher, which the latter paid. The referee allowed the full amount, $313 75, but on motion to set the report aside in the court below, this amount was reduced to $276 86. There is some evidence for the appellant sustaining this claim on his part to the full amount allowed by the referee, while upon the other hand our attention has not been directed to any countervailing proof, and we have been wholly unable to discover any in the evidence accompanying the transcript. With this view of the proofs applicable to this item, we are compelled to reverse the finding of the lower court as to its amount, and give the appellant the same credit that was

allowed by the referee. We do not think, however, that
the statement of the account in the decree appealed from is
altogether accurate in some other respects. The payment
of $180 by the respondent, being the first year's interest on
the Gray note, only entitled him to a credit with the part-
nership for that amount, and he should not be credited with
it as an individual demand against the appellant. And
while the Max Voght & Co. note, dated December 6, 1879,
for $788, did include both a debt due from the partnership
of $537 and an individual debt of O'Leary's of $251, it
seems to us that it must be treated as a partnership note as
to the amount due from the firm, and Fargher's individual
account with O'Leary credited with the amount of the lat-
ter's personal indebtedness included therein, and paid to
Fargher. We also credit Fargher's individual account with
O'Leary with the $20 loaned by him to the latter. With
these changes the account stands as follows:

| | | |
|---|---:|---:|
| Balance on individual account due Fargher.....$ | 68 | 69 |
| O'Leary's net credit with partnership.......... | 391 | 37 |
| Fargher's net credit: | | |
|     Amount paid to Peter Richt............. | 513 | 00 |
|     Amount paid for partnership on Max Voght | | |
|         & Co.'s note................... | 639 | 31 |
| Balance on all other accounts with the firm..... | 682 | 77 |
|      Total..............................$1,835 | 08 | |

Deducting O'Leary's credit with the firm, and adding
Fargher's individual demand against O'Leary to one-half
the remainder, gives $790 54 as the amount for which the
appellant, Fargher, is entitled to foreclose his chattel mort-
gage. We are satisfied the court below did not abuse its
discretion in directing each party to pay his own costs. It
is not probable that any settlement of their accounts could

have been effected without resorting to a suit in equity, and the case presents questions, both of law and fact, of such difficulty as rendered a suit for an adjustment of differences between them by no means improper or unreasonable.

The fact that a balance was ascertained in favor of the defendant, after an examination by the court, or that the plaintiff failed to establish a large portion of his account, neither separately nor together, were sufficient to deprive the trial court of its discretion under such circumstances. And so well satisfied are we of the propriety of the order of the lower court requiring each party to pay his own costs, that we shall make the same disposition of the matter upon the appeal.

The decree is modified in the particulars above specified, and in all other respects affirmed. And each party will pay his own costs in this court.