C. W. Jarrell *et ux.* v. G. H. Block.

(Filed September 20, 1907.)

(92 Pac. 167.)

MECHANICS' LIEN—Property Subject—Leasehold Estates. Under the statutes of this territory a mechanic's lien will attach in any proper case to a leasehold estate; and the fact that the tenant may have the right to remove his building, fixtures and machinery from the leased premises, instead of lessening the lien, or preventing it from attaching to the leasehold estate, will, as we think, enlarge the lien, and enable the lienholder to obtain a greater interest in the leased premises. Neither will the fact that for some purposes, and under some circumstances, the buildings, fixtures and machinery put upon the leased premises by the tenant may be considered as personal property, have the effect of preventing the lien from attaching.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before F. E. Gillette, Trial Judge.*

Affirmed.

*Hudson & Keys*, for plaintiffs in error.
*Stevens & Myers*, for defendant in error.

STATEMENT OF THE CASE.

Plaintiff filed his petition in the district court of Comanche county, seeking a foreclosure of mechanic's lien for $342.00, claimed to be due for labor and material furnished under sub-

contract for the construction of a frame dwelling on certain lots in Butler's addition to the city of Lawton, owned by C. W. Jarrell, and which are more particularly described in the lien and in the petition. A personal judgment was prayed against L. H. Robinson, the contractor, but he was not served with summons, the return being "not found." The defendant, O. P. M. Butler, made no appearance, though personally served. Defendants C. W. Jarrell and wife filed their answer in which it was admitted that L. H. Robinson built a house upon the tract of land mentioned, but C. W. Jarrell and wife deny that C. W. Jarrell was then owner of said lot, but that he was only a sublessee of said lot of ground; that on the ―――― day of November, 1902, said defendant subleased said tract from O. P. M. Butler, he being the original lessee from the school land board of the territory of Oklahoma; that he was in possession of said premises as sublessee, the title to the same being in the United States or the territory of Oklahoma; that either the United States or the territory is the owner thereof; and that no contract was entered into between the plaintiff and the agent or trustees of either said territory or the United States. These answering defendants admit the service of lien, but they say that the name of the owner was not properly stated therein, and, among other things, allege payment of a portion of the account, and also allege that the contract has never been completed nor accepted by them. The plaintiff filed reply, alleging that under the act of congress approved May 4, 1894, the board for leasing school, public building, and college lands of Oklahoma Territory, on the 15th day of May, 1902, being fully authorized to so do, entered into a contract with O. P. M. Butler, allowing the subleasing of said lands in controversy, with other lands, for townsite purposes, and attaches a copy of the contract between said O. P. M. Butler and said board. Upon the issues thus framed, the cause, by agreement of parties, was referred to Hon. O. H. Travers, who in due time qualified. The time for making report was extended at various times, and the

respective parties waived any irregularities there might have been in these orders by appearing before the referee, and after his report recognizing the same in various ways; each desiring the cause submitted on its merits. A trial was had before the referee, and all the proceedings before him are incorporated in the record at page 28 to 128. The report of the referee was duly made and filed, and is found in the record pages 28 to 38, in which judgment for plaintiff is recommended. Motion was duly made to confirm the report of the referee, by the plaintiff, and the defendants filed their motion to set aside the report of the referee and grant a new trial. The motion of the defendant to set aside the report of the referee and grant a new trial was overruled, and the motion of the plaintiff to confirm the report of the referee was sustained. To all of which the defendant excepted and excepts, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: It is conceded by counsel for plaintiff in error that there are no disputed questions of fact in this case, and that the issues are entirely questions of law. The issues of law are stated as: First, a mechanic's lien does not affect school land, the title to which is in the government of the United States; second, the residence in question is personal property by the terms of the lease, and a mechanic's lien does not attach to personal property independent of the real property; third, that the trial court did not have jurisdiction of the subject-matter of the action. It will be observed that the foregoing legal proposition embraces all of the assignments of error, and it is conceded by counsel for plaintiff in error that a discussion of one of the assignments of error would be a discussion of all.

The first proposition to be considered is: This land being school land, and the tenant in possession being a subtenant under the lessee from the school land board, and the title to the land being in the government of the United States—that is, the fee

being in the government of the United States—is the person in possession the owner to that extent that mechanic's lien proceedings could be prosecuted against whatever interests he may have in the land? By the act of May 4, 1894, the congress of the United States granted to the territory the right to lease the school, public building, and college lands of Oklahoma Territory, under such regulations and laws as the legislature may prescribe, and until such time as the legislature might act, rules and regulations of the secretary of the interior theretofore prescribed should govern, except that leases should not require his approval. That the only action taken by the legislature was the adoption of council joint resolution No. 16, in the year 1895, which authorized the board to continue the leasing of lands in the event that the legislature failed to act, and by virtue of the act of congress and the joint resolution, the board for leasing school and other lands was authorized to lease the school lands within the territory, and that the tract in controversy was a part of lands reserved for school purposes. The record further shows that the said board in fact made a lease to O. P. M. Butler, which in terms allowed him to sublease for townsite purposes, the lease and contract to Butler being found on page 17 of the record, and the sublease from Butler to Jarrel on page 93 of the record. As a conclusion of law, the referee found that a person holding even a leasehold estate was, for the purpose of the mechanic's lien law, the "owner" of the premises, and that the lien attached to his interest in the estate, whatever that might be, and to the buildings erected. We think this was a correct statement of the law.

It is urged by plaintiff in error in his brief that the title to the land, and we presume he means by this the fee to the land, was in the government of the United States. That proposition, it seems to us, makes no difference with the case. It makes no difference whether the fee to the land was in the territory, or the United States. Congress had the right, undoubtedly, to create any estate in said lands it saw fit, if the title was still in the

government. It had deemed it expedient to authorize the leasing of these lands under the policy inaugurated by the honorable secretary of the interior years since, giving, however, to the territory the right to legislate further thereon. The territory had spoken through its legislature and said that the leasing of the lands should be left to the board, which was in control of them in 1895, and in that board the power to lease has been vested. The power of that board to create leasehold rights cannot be doubted. It has been given by the government and confirmed by the territorial legislature. Conceding that the lease does not convey any portion of the fee of the land, it must be seen that a lease executed by the government, or by its authority, is at least of equal dignity with a lease from an individual who owns the fee. Our mechanic's lien law in force at the time of the filing of the lease in controversy was that adopted from the state of Kansas, and, in so far as it affects the questions involved herein, is as follows:

"Sec. 619. Any person who shall, under contract with the owner of any tract or piece of land, or with the trustee, agent, husband or wife of such owner, furnish material for the erection, alteration or repair of any building, improvement, or structure thereon. or who shall furnish or perform labor in putting up of any fixture, or machinery in or attachment to any such building, structure or improvement; or who shall plant any trees, vines, plants, or hedges in or upon said land; or who shall build, alter or repair or furnish labor or for building, altering or repairing any fence or foot walk in or upon said land or any sidewalk in any street abutting said land shall have a lien upon the whole of said piece or tract of land, the building and appurtenances in the manner herein provided for the amount due him for such labor, material, fixtures or machinery."

The supreme court of the state of Kansas has, in our judgment, sufficiently answered the contention of plaintiff in error as to the construction to be put on this mechanic's lien law, long prior to its adoption by the legislature of this territory, and they have also answered the second contention, to-wit, that, as the

buildings on this land were personal property, the mechanic's lien law would not attach to them. Under a well-settled and oft-repeated rule of this court, the construction given a statute by the state from whence it was taken, prior to its adoption here, is adopted with the statute, and in effect forms a part of it. This identical statute was construed by the Kansas court prior to its adoption in Oklahoma, and the word "owner" therein was held to embody any interest in lands, no matter how slight. In the case of *Hathaway v. Davis*, 32 Kan. 693, 5 Pac. 29, the Kansas supreme court say: "About the only ground upon which it is claimed that it is not correct is the claim that a leasehold interest in real estate is not the subject of a mechanic's lien, or a lien for material or labor furnished in making improvements upon real estate; and it is claimed that this is especially true in the present case, where the tenant has the privilege of removing all the improvements placed upon the leased premises. The statute with reference to this subject provides, among other things, as follows: 'Any mechanic, or other person, who shall under contract with the owner of any tract or piece of land, * * * '" In the same opinion, the court further says: "The word 'owner' in the first section of the act is not limited in its meaning to an owner of the fee, but includes, also, an owner of leasehold estate. If the ownership is in fee, the lien is upon the fee; if it is of a less estate, the lien is upon such smaller estate. To hold that an owner in fee only is meant would be directly subversive of the policy of the act, and in a great degree render it useless. We think a mechanic's lien or lien for material or labor may attach in any proper case to a leasehold estate; and the fact that the tenant may have a right to remove his buildings, fixtures, and machinery from the leased premises, instead of lessening the lien, or preventing it from attaching to the leasehold estate, will, as we think, enlarge the lien and enable the lienholder to obtain a greater interest in the leased premises * * *." "Neither do we think that the fact that for some purposes, and under some circumstances, the build-

ings, fixtures, and machinery put upon the leased premises by the tenant may be considered as personal property, have the effect of preventing the lien from attaching. For the purpose of the lien in such a case, the leasehold interest will include the right to the buildings, fixtures, and machinery, and the right to remove them; and the whole of such leasehold interest, with the buildings, fixtures, and machinery, will be considered as an interest in the real estate, and, under the circumstances, the lien will attach to all. The statute giving liens for materials and labor expressly and specifically mentions buildings, fixtures, and machinery, and it was intended by the statute that such lien should attach to the buildings, fixtures, and machinery, as well as to the whole of the estate owned by the party contracting for them." *Block v. Pearson et al.* (Reported in this volume) 91 Pac. 714.

But it is claimed that the action of the territorial officials on making the lease in question amounted to an interference with the primary disposal of the soil. We are unable to see what objection there can be, since congress, later than the organic act referred to, permitted the action, and the organic act, if in conflict with the later expression of congress, must yield to it. It is apparent from this record that the plaintiff did not seek, the referee did not recommend, and the court did not give him any lien upon the property of the United States, or of the territory, but expressly asked that the interest of the defendant be taken, and the referee so recommended, and the decree of the court followed the recommendation. If congress at any time should withdraw its consent by a repeal or amendment of the law, and the defendant's interest was thereby lessened, the interest passed by the decree would likewise be affected, in other words, nothing but the exact interest of the defendant, be that great or small, was affected, and if the interest which the United States and the territory expressly agreed should pass to the defendant was taken, and no more, we fail to see how it can be urged that the rights of either the territory or the United States were encroached upon.

The only remaining assignment of error is that the court did not have jurisdiction of the subject-matter of the controversy. This assignment of error is insisted upon, upon the theory that as the title to the land in question was in the government of the United States, and that in determining this case the character of the land had to be determined, the court did not have jurisdiction to hear and determine that question. But this contention has been fully answered by the supreme court of this territory in the case of *Parker v. Lynch,* 7 Okla. 631, 56 Pac. 1082, in an opinion written by Justice Burwell, in which it is said: "Jurisdiction is the authority by which courts and judicial officers take cognizance of and decide cases; power to hear and determine a cause. If the court has jurisdiction of the persons to the action, and the cause is the kind of a cause triable in such court, it has jurisdiction of the subject of the action, and has the power to render any rightful judgment therein." But when we consider this case, and bear in mind the fact that no interest of the United States in the land in question is sought to be taken, and that the only effect of the report of the referee and the decree of the district court is to subject to the lien such interest as the defendant in the court below had in the land, the reason for the contention in the assignment of error that this court has no jurisdiction fails.

Having examined the entire record, and finding no error therein, the judgment of the district court is affirmed, at the costs of the plaintiff in error.

Gillette, J., who presided in the court below, not sitting; Pancoast and Garber, JJ., absent; all the other Justices concurring.