Argued October 11, 1950; decree vacated; judgment modified
February 28, 1951

# WARD *v.* TOWN TAVERN ET AL.

228 P. 2d 216

[ 1 ]

*William L. Dickson* and *Arthur H. Lewis,* of Portland, argued the cause for respondent. With them on the brief were McCarty, Dickson & Swindells, of Portland.

*John F. Reynolds,* of Portland, argued the cause for appellant. On the brief were Pedersen and Reynolds, of Portland.

Before LUSK,* Chief Justice, and BRAND,† ROSSMAN, HAY and LATOURETTE, Justices.

## ROSSMAN, J.

This is an appeal by one of the two defendants, Town Tavern (a corporation), from a decree of the Circuit Court which (1) affirmed and adopted findings of fact and conclusions of law rendered by Honorable Herbert C. Hardy, referee, before whom the cause was tried; (2) dismissed the cause as to the other defendant, Pittock Block, Inc.; (3) awarded judgment to the plaintiff against the defendant, Town Tavern, in the following sums: $6,350.49 as the balance due the plaintiff for work and materials furnished to the defendant; $2.25 for filing and recording the plaintiff's lien notice; $5.00, cost of the preparation of the lien notice; $1,850 as compensation for the plaintiff's attorney; and $850 as compensation for the referee; and (4) sustained the validity of the plaintiff's lien and ordered its foreclosure.

The defendant-appellant presents the following assignments of error:

"The court erred in refusing to dismiss the suit."

"The court erred in entering a personal judgment against defendant-appellant."

"The court erred in allowing full recovery to respondent" [plaintiff].

---

\* Chief Justice when this case was argued.
† Chief Justice when this opinion was rendered.

"The court erred in allowing respondent to recover costs and attorney fees."

"The court erred in refusing to give judgment to defendant-appellant on its counterclaim."

The plaintiff (sole respondent) is a building contractor. The defendant, Town Tavern (sole appellant), operates a restaurant in leased portions of an office building in Portland owned by the defendant, Pittock Block, Inc. After the latter had filed an answer which set forth grounds of nonliability, the plaintiff confessed the averred facts and made no attempt to establish any liability on the part of that defendant. As we have indicated, the attacked decree dismissed the suit as to Pittock Block, Inc., and from that part of the decree no appeal has been taken. Hereafter, when we employ the term "defendant", we will mean Town Tavern.

In the early part of 1947 the defendant wished to alter the premises occupied by its restaurant and also to incorporate into them two adjacent store rooms and some additional basement space, all of which it had acquired under lease. A firm of store designers, entitled Rink and Hoffmann, prepared plans and specifications which outlined the proposed improvements. Before the plans had taken their final form, some estimates were obtained. June 10, 1947, the plaintiff and the defendant signed a contract which bound the plaintiff to perform the work "as shown by the plans, drawings and specifications prepared for the job by Messrs. Rink and Hoffmann." The undertaking included, in addition to the demolition of some existing partitions and structural parts, other work such as carpentry, plumbing, painting, wiring, plastering and

cement work. No specified day was fixed for the completion of the job, but the contract said:

> "Said alterations and repairs shall be commenced within fifteen days hereafter and shall be prosecuted to completion with all due diligence. However, the contractor shall not be responsible for delays in the progress or completion of said alterations and repairs which are occasioned through no fault or neglect of his * * * ."

Much time was consumed during the trial concerning the defendant's liability or nonliability for performing work not shown in the plans and known as extras. Concerning that phase of the dispute, the contract contained this provision:

> "Any and all changes or alterations or extras in the alterations or repairs that are not shown by the plans and specifications first furnished to the contractor shall be authorized by a letter or other writing directed by the owner or Rink and Hoffmann, Store Designers, to the contractor and acknowledged in writing by the contractor or his superintendent or foreman on the job, and the owner shall pay for the same on the same basis as herein provided for the original work."

The following is the part of the contract which governs the amount to be paid to the plaintiff:

> "All of the alterations and repairs made and the work done shall be paid for by the owner to the contractor at the contractor's cost plus an amount equal to 15% thereof except for the plumbing, wiring and painting. The owner shall pay the contractor for the plumbing, wiring and painting an amount equal to the subcontractor's price plus an amount equal to 10% of said subcontractor's price. The contractor's cost shall include the following: * * *."

After the execution of the contract, the plaintiff promptly began his undertaking. At the outset, while walls were being demolished and other phases of the project were under way, the restaurant remained in operation, but later, as contemplated, it closed while other parts of the work were being performed. When the contract was signed, the parties surmised that two weeks' shutdown for the restaurant would suffice. However, it was forced to remain closed four weeks. October 2, 1947, the plaintiff claimed that he had completed his work and shortly presented to the defendant a statement of account which totaled $27,471.85 less $19,241.29 paid to him during the progress of the work. The total was more than had been anticipated. The increased cost was due, in part, to the incompleteness of the plans, unanticipated difficulties that were encountered, many changes in the work that the defendant ordered and additional work performed at its request.

Toward the close of the undertaking ill will was engendered between the parties, the blame for which each attributed to the other. As a result of that development, the plaintiff did not feel at liberty to return his workmen to the restaurant after the completion of the work to trim an occasional door or transom that stuck and to make adjustments to plumbing and other installations that failed to function properly. The lack of that follow-up attention did not enhance the defendant's appraisal of the work. The account was not paid, and presently the plaintiff filed a notice of a mechanic's and materialman's lien (§§ 67-101 to and including 67-113, O.C.L.A.), which stated that in performing his services the plaintiff had earned

$27,471.85 and had credited the account with $20,570.44. It showed a balance of $6,901.41 was due the plaintiff.

The cause which underlies this appeal arose when the plaintiff filed his complaint which, omitting mention of formal matters, alleged (1) the contract, as well as requisitions by the defendant for extra items, their performance by the plaintiff, the fact that the plaintiff earned in the manner just indicated $27,471.85, that there was credited on the account $20,570.44 and that a balance of $6,901.41 remained unpaid; (2) that (a) the plaintiff filed a notice of a mechanic's and materialman's lien which, after stating the condition of the account, showed a balance of $6,901.41 remained unpaid, (b) the plaintiff had paid $2.25 for filing the lien notice and $5.00 for having it prepared, and (c) the plaintiff had notified the defendant of the filing of the lien and of his intention to foreclose it. The complaint closed with a prayer for (1) judgment for the aforementioned sums of $6,901.41, $2.25, $5.00 and an attorney's fee of $3,000; (2) a decree for the establishment of the lien; and (3) an order for the foreclosure of the lien. Specifically, the estate or item of property upon which the plaintiff sought to impose his lien is thus designated in the complaint:

"against the leasehold interest of each and both of the defendants in and to the land hereinabove described, and against said office building, the Pittock Block, constructed thereon, and against the interest that said defendant, Town Tavern, has in and to said above described land and said office building".

The answer, apart from admitting the status of the parties, the execution of the contract and that the plaintiff performed "certain labor and furnished certain

materials,'' denied all other averments. In addition, it submitted three ''further, separate, affirmative answers.'' The first of these averred that the plaintiff ''did not diligently pursue'' his contract, with the result that the defendant was damaged in the amount of $2,100. The second alleged that the reasonable value of all of the work and materials furnished by the plaintiff did not exceed $15,000 and that the defendant had paid on account $20,570.44, thus overpaying the amount for which it was liable $5,570.44. The third stated that in the performance of his work the plaintiff used ''inferior materials and workmanship and negligently and improperly performed various parts of the work,'' to the damage of the defendant in the amount of $3,000. The prayer of the answer demanded that the complaint

> ''be dismissed and that this court do make and enter a decree adjudging that the plaintiff has no lien against the premises occupied by this answering defendant * * * and that this court do further give and grant to this answering defendant a judgment upon its first, affirmative answer and defense in the amount of $2,100 and for a judgment in the amount of $5,570.44 upon its second affirmative answer and defense and a further judgment in the amount of $3,000 upon its third affirmative answer and defense.''

When the cause was assigned for trial to the Honorable James R. Bain, one of the judges of the Circuit Court, he entered an order of reference, which recited:

> ''The plaintiff and the defendants, through their attorneys of record, having orally stipulated in open court that an Order of Reference be made appointing Herbert C. Hardy, of Portland, Oregon, to take all the testimony and evidence of the plaintiff and defendants respecting all of the issues made by

the Pleadings * * * and counsel having further stipulated that said referee might and should make appropriate Findings of Fact concerning said issues and an appropriate report concerning said issues; * * *. It is further ordered, adjudged and decreed that after taking, hearing and considering all of the testimony and evidence offered by the parties and the stipulations and admissions aforesaid, that said referee make appropriate Findings of Fact and report to the court what judgment or relief, if any, should be awarded the parties or any of them. * * * ''

Accompanying the signature of Judge Bain to the Order of Reference there appears the word "Approved" followed by the signatures of counsel for the plaintiff and for the defendant.

After the cause had been referred to the Master, a trial occurred before him, in the course of which testimony of twenty-five witnesses was taken, which, as transcribed, covers 1,167 pages. In addition, there were received 65 exhibits consisting in part of time books, sets of blueprints, extensive statements of account and similar multiple-paged documents. The referee displayed a commendable interest in the duty which he had undertaken. Unencumbered with a witness stand and in the intimate manner rendered possible by an office, he sat down with the witnesses at his desk as the story was unfolded. The milieu was one in which the parties and witnesses felt at ease. The plans, specifications and other documents lay before the referee, counsel and witness as the facts were recounted. The referee himself asked many of the questions and, since all of the exhibits were upon his desk, he could turn quickly from one to another in grasping the significance of the testimony. Of course, the oath was administered to the witnesses, and

the rules of evidence were observed. An entry in one of the records shows that at the close of the hearing the referee "spent four full days in the study and preparation of the case and in the preparation of the Findings of Fact and Conclusions of Law." Those four days were well spent. We have read the entire transcript of evidence and believe that the findings of fact are an excellent, succinct portrayal of the facts.

The referee's findings of fact include the following:

"The plaintiff substantially performed all of the terms and conditions of the aforesaid contract on his part to be performed, * * * except as in the details hereinafter set forth.

"The contract price and the reasonable value of said labor performed and materials furnished by the plaintiff and used in the alteration and repair of said restaurant premises in said office building, including the plaintiff's 15 per cent and 10 per cent profit and overhead, was and is the sum of Twenty-seven Thousand Four Hundred Seventy-one and 85/100 Dollars ($27,471.85), less the sum of Five Hundred Fifty and 92/100 Dollars ($550.92) which represents the reasonable cost to the defendant Town Tavern to make certain corrections for minor items of work not done by the plaintiff in a good and workmanlike manner."

The findings state that the defendant paid to the plaintiff during the progress of the work $20,570.44, leaving a balance of $6,901.41. They credit the defendant with $550.92 on account of the aforementioned defective workmanship, leaving a balance payable of $6,350.49. The defective details are carefully enumerated, one by one, in the findings. Accompanying the enumeration is a delineation, item by item, of the defects and a finding of the cost of remedying each of them.

The first of the conclusions of law declares:

"The plaintiff is entitled to judgment against the defendant Town Tavern, an Oregon corporation, for the sum of Six Thousand Three Hundred Fifty and 49/100 Dollars ($6,350.49)."

It was in that sum, together with the incidental items, that the court, upon approving the findings of fact and conclusions of law, entered the attacked decree and judgment.

After the findings of fact and conclusions of law had been submitted to the Circuit Court, the defendant filed objections to them which, upon a hearing, were overruled.

We shall now consider the first assignment of error. It reads: "The Court erred in refusing to dismiss the suit." Amplifying that contention, the defendant says: "The lien should be dismissed as the lien statement contains unsegregated non-lienable items."

Evidence supplied by the plaintiff himself shows that a large part of the charges which he made was for the installation upon the leased premises of articles which, clearly, were trade fixtures. They were not intended to become part of the building and were removable at the defendant's pleasure. Examples of them are coffee urns, steam chests, a soda fountain, a hood over the kitchen stove, shelves or racks in the refrigerators and a vanity table. The charges for installation of the trade fixtures were not segregated in the lien notice from the other charges, but were lumped in with them. It is impossible to determine from anything contained in the lien notice how much of the total charge of $27,471.85 was for labor and material expended in the installation of the trade fixtures.

■ It is well settled that a lien is non-enforceable if the lien notice mingles in unsegregational form lienable and non-lienable items: *Valder v. Berg,* 122 Or. 661, 260 P. 240. The plaintiff frankly concedes that rule, for his brief says: "It is admitted that where a mechanic's lien claim contains lienable and non-lienable items in a lump sum, the lien is invalid and suit cannot be maintained." Therefore, if the work and materials spent upon the trade fixtures are non-lienable, the lien cannot be sustained. We must, therefore, determine whether or not the labor and materials consumed in attaching to the building the coffee urns, soda fountain, etc., were lienable.

■ Mechanics' and materialmen's liens are purely statutory and are obtainable only by those who can meet the statutory requisite. Like claimants for Cinderella's slipper, an exacting demand must be met by applicants for a lien, and all who cannot conform are rejected. Section 67-101, O.C.L.A., says:

> "Every mechanic, * * * contractor, * * * and other persons performing labor upon or furnishing material, * * * to be used in the construction, alteration or repair, either in whole or in part of any building, wharf, bridge, ditch, flume, reservoir, tunnel, fence, sidewalk, machinery or aqueduct, or any structure or superstructure, or in digging, drilling, driving or boring any well, shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner of the building or other improvement, or his agent; * * * ."

This case is not concerned with a "wharf, bridge, ditch" or any of the other structures enumerated in the act with the exception of "building". Hence, we can disregard all of the enumerated classes except "any

building". Next, it is to be noticed that no lien is obtainable for anything done concerning a building unless the thing done consisted of "performing labor upon or furnishing material" used "in the construction, alteration or repair" of the building.

Liens authorized by § 67-101, O.C.L.A., may be had upon estates less than freeholds in extent: § 67-102, O.C.L.A., and *Matthiesen v. Arata,* 32 Or. 342, 50 P. 1015. But § 67-101, in prescribing the conditions under which a lien is obtainable, does not require less from an applicant for a lien upon a leasehold estate than it does from one who seeks a lien upon the freehold. Both are confronted with the same demand. Before going further, we shall take notice of decisions which dealt with the issue presented by this appeal; that is, may one have a lien upon a leasehold estate for supplying labor or material in attaching to a building, covered by the lease, a trade fixture which did not become and was not intended to be part and parcel of the building.

In support of his alleged lien, the plaintiff cites: *Dobschuetz v. Holliday,* 82 Ill. 371; *Cornelius v. Washington Steam Laundry,* 52 Wash. 272, 100 P. 727; *Hathaway v. Davis,* 32 Kan. 693, 5 P. 29; *Ehrsam v. Rice,* 153 Kan. 483, 112 P. 2d 95; and *Jarrell v. Block,* 19 Okl. 467, 92 P. 167.

We do not believe that the Dobschuetz decision held that a mechanic's lien is obtainable for labor spent in installing trade fixtures. The court described the installations placed upon the property by the plaintiff in that case as "attached to the realty" and in another place said they were "attached to the soil." A third reference to them was "Connected, as they are, with other machinery attached and made part of the realty, they become a part also." If a word or two found in

the decision encourages an inference favorable to the plaintiff, later decisions by the Illinois courts, of which we shall now take notice, which construed and applied the Dobschuetz decision, show that the inference is unwarranted: *Curran v. Smith,* 37 Ill. App. 69, and *Haas Electric Co. v. Amusement Co.,* 236 Ill. 452. In the Curran decision, the court said:

> "A case, however, which, * * * is in point, is Dobschuetz v. Holliday, 82 Ill. 371, where it was held that a box made to be used in connection with other machinery in hoisting coal from mines was a part of the realty, and that a mechanic's lien therefor attached."

In the Haas Electric Company opinion, it is said:

> "In Drew v. Mason, 81 Ill. 498, it was held that furnishing material and labor in placing a lightning rod on a house is not furnishing materials and labor in building, altering, repairing or ornamenting a house, in the sense those terms are used in the Mechanic's Lien law; while in Dobschuetz v. Holliday, 82 Ill. 371, it was held that a steam engine, machinery and fixtures attached to the soil by a lessee thereof for the purpose of hoisting coal from mines situated thereon, including all boxes and all other necessary appliances connected therewith, become a part of the lessee's estate therein and entitle the party furnishing such engine and fixtures to a mechanic's lien against the estate of the lessee on account thereof."

Thus, we see that the Illinois courts do not construe the Dobschuetz decision as a holding that the installation of trade fixtures which do not become part of the realty affords the basis for a mechanic's lien. We now turn to another Illinois decision, *McAlear v. New York Life Insurance Co.,* 177 Ill. App. 339, in which the alleged lien was based upon the fact that the plaintiff's

assignor, at the request of a tenant of the defendant who operated a restaurant in a building owned by the defendant, installed in the restaurant a ventilating system for which the tenant failed to pay. The system consisted largely of a blower, motor and canopy. In holding that the lien could not be sustained, the decision said:

> "That the apparatus, or part of it, was in some way attached to the building and the sidewalk under the street, cannot be questioned under the evidence, but as between the landlord and the tenant we are of the opinion that the material and work constituted a mere trade fixture and was not the proper subject of a lien as against the building. The distinction between ordinary materials and trade fixtures with respect to being proper subject of lien under our statute is stated in Haas Elec. Co. v. Amusement Co., 236 Ill. 452. In that case it is substantially held that our statute has modified the law with reference to ordinary material furnished, but in the case of fixtures, apparatus or machinery it must appear that they are so installed as to become a part of the real estate."

We do not think that Illinois holds that an ordinary trade fixture constitutes the basis for a mechanic's lien.

We are of the belief that *Cornelius v. Washington Steam Laundry,* supra, the second authority cited by the plaintiff, is not supported by the decisions upon which it depends. Moreover, *Westinghouse Electric Supply Co. v. Hawthorne,* 21 Wash. 2d 74, 150 P. 2d 55, is clearly a holding that articles supplied by a materialman which do not become part or parcel of the building cannot support a lien. That decision ignored *Cornelius v. Washington Steam Laundry.* In the Westinghouse case, it appeared that the plaintiff had supplied a large quantity of electrical goods for a plant.

Examples of the goods were copper wires, wire holders, conduits and motors. The decision quoted with approval the following taken from 36 Am. Jur., Mechanics' Liens, § 78, p. 64:

"The determination of the question whether the article furnished has so become a part of the realty as to be a fixture is considered conclusive of the right to a lien on the realty for furnishing the material, and this may be accepted as the general rule, except that even though the article may have become a part of the realty, there is no right to a lien if the transaction was a mere sale of personal property as such and without any regard to its contemplated particular use."

That decision held that the wire, conduits and items essential to fastening them in place were fixtures. All of them had been permanently attached to the building. Concerning the motors and some of the other items, the decision pointed out:

"The motors were bolted to the floor with lag screws to hold them stationary while in use, but were moved from place to place as convenient. * * *
"Several of the motors furnished were equipped with sliding rails. The evidence does not show how these rails were used or installed. Upon the record, it cannot be held that they ever became fixtures."

Then the decision said:

"In the Zimmerman case it was held that engines, lathes, saws, edgers, planers, etc., were not fixtures, but remained personalty. In the case at bar, there is no evidence that the motors used in operating the machines were intended to be or had become fixtures."

The court ruled that the wires, conduits and their fasteners were fixtures, but that all of the other appliances, such as the motors and sliding rails, were not subjects

for a lien. It is apparent that our sister state to the north does not employ the rule attributed to it by the plaintiff.

We come now to the Oklahoma and Kansas decisions cited by the plaintiff. As quoted in *Hathaway v. Davis,* supra, Kansas has a statute which provides:

> "Any mechanic, or other person, who shall, under contract with the owner * * *, furnish or perform labor in putting up any fixtures or machinery in or attachment to, any such building, * * * shall have a lien upon the whole tract or piece of land, the buildings and appurtenances * * * ."

As is stated in the Jarrell decision, Oklahoma's mechanic's lien statute "was that adopted from the state of Kansas." It incorporates the provision just quoted. Oregon has no clause of like kind. In the Oklahoma and Kansas decisions the courts found that the labor for which liens were sought was expended upon items which had become part of the realty. In the Oklahoma case, the item was a dwelling house. In the Kansas (Hathaway) case, the object was a building occupied by a creamery; in the other Kansas (Ehrsam) case, the structure was a grain elevator. It may not be amiss in reading those decisions to take note of the following, which we quote from 36 Am. Jur., Mechanics' Liens, § 78, p. 63:

> "A further distinction is also made, in that the right to a mechanic's lien as to materials annexed to realty is to be governed by the rules of the law of fixtures applicable as between vendor and vendee and between mortgagor and mortgagee of realty, and probably by the rules applicable between heir and executor, but not, it seems, by the rules for determining what are fixtures between landlord and tenant."

We shall now consider three decisions rendered by this court concerning mechanics' liens in which the landlord-tenant relationship was a factor.

In *Patterson v. Gallagher*, 25 Or. 227, 35 P. 454, the plaintiffs were plumbers and two of the defendants were owners of a store building which was occupied by the third defendant, their tenant. The latter, preparatory to conducting a saloon upon the leased premises, employed the plaintiffs to connect his bar with the water and sewer pipes. In the case now before us some of the charges mentioned in the lien notice were for services rendered by plumbers in connecting a soda fountain with the city's pipes and another part of the charges was for the services of the same men in connecting a cocktail bar. In the Patterson case, the tenant failed to pay the charges and thereupon the plumbers filed a mechanic's lien notice. The decision, adverse to the lien, after quoting from the section of our code of which we have taken notice, said:

"Labor upon or material used in the construction, alteration or repair of a building is the test of the right to a lien under this statute."

It added:

"The right to a lien proceeds upon the theory that the work and material for which the lien is sought has increased the value of the building by becoming a part thereof; * * * ."

The decision held:

" * * * it is clear the labor performed and material used by the plaintiffs did not become a part or parcel of the building, but were solely for the use and convenience of the tenant in conducting his business and removable by him whenever he might cease to be such. They were fixtures like the bar to

which they were attached, and were not more permanently connected with the building.''

Although the tenant was a party-defendant, the court's reasoning did not expressly mention him. The decision dismissed the complaint.

In *Honeyman v. Thomas,* 25 Or. 539, 36 P. 636, the plaintiffs were materialmen. The defendants were lessees and an attaching creditor of the latter. The leasehold estate was a stone quarry. The material supplied by the plaintiffs consisted of the castings, chains, wire ropes, etc., which, when assembled at the quarry, became a derrick. The latter was fastened to the ground by guy wires which extended from the top of the derrick to stakes in the ground and to anchor poles which were imbedded in rock. After the completion of the derrick it was attached by the creditor whom we have mentioned, and after judgment the derrick was sold. In the meantime, the plaintiffs filed a notice of lien ''upon said derrick, materials and machinery, and also upon Thomas & Hartley's leasehold interest in said property, * * * .'' The trial court held that the materials which constituted the derrick never lost their status as personal property and that the tenant was always free to remove them. It held the lien invalid. In sustaining that decision, this court said:

> ''We think the court below was fully warranted in holding that the derrick was a movable appliance, and not subject to a lien.''

In *Matthiesen v. Arata,* 32 Or. 342, 50 P. 1015, the plaintiff was a contractor, and the defendant was a lessee who held for a term of years a room in a building in which he planned to operate a saloon. Pursuant to contract, the plaintiff furnished the material and

performed the work whereby the room was rendered suitable for the intended purpose. His work consisted of wainscoting the room with oak lumber, installing oak-trimmed pilasters and ceiling beams, constructing partitions, hanging a door, framing and casing the door opening, and performing other similar work. The defendant, that is, the lessee, failed to pay for the work and after a lien notice had been filed the suit under review was instituted. The Circuit Court sustained the lien. In holding that the installations became a part of the freehold, the decision of this court said that the situation was not "embarrassed by any agreement of the parties that the material and labor furnished should be and remain personal property." After reviewing the tests for determining whether personal property has been so affixed to a structure that it has become a part of the freehold, the decision said:

> "The erections were permanently and substantially annexed, as is usual in such cases, and could not have been removed without substantial damage to the building and essential injury to themselves. They were appropriate, or at least adapted, to the contemplated use of that part of the realty with which they were connected, and their character and mode of annexation indicate that the intention was to make them a permanent accession to the building, * * *."

The decree of the Circuit Court was affirmed and the lien was sustained.

■ We see from the three decisions just reviewed that work and materials cannot support a lien of the kind authorized by § 67-101, O.C.L.A., unless they became a part and parcel of the building itself. If they were expended upon an article belonging to the tenant, such as a bar or a derrick which did not become a part

of the building, they do not afford a basis for a lien. But if the work and the material were so applied that they became a part of the building itself, as, for example, in furnishing and fastening in place wainscoting, partitions and doors, failure to pay for them authorizes a lien.

The three decisions just reviewed are in accord with the opinions rendered by the courts of other states. Vol. 57, C. J. S., Mechanics' Liens, § 26, p. 520, says:

"As a general rule mechanics' lien statutes do not allow a lien for trade fixtures or chattels, fixtures, improvements or additions which a tenant may remove during his tenancy or at the expiration thereof."

From 36 Am. Jur., Mechanics' Liens, § 31, p. 36, we quote:

"On the question of the right of removal, it is generally considered that since nothing can be the basis of a mechanic's lien which never becomes a part of the realty, therefore, the furnishing and fitting of trade fixtures do not give the right to a lien even on the leasehold, for they remain personalty."

See, also, § 78 of the same volume.

*McFeron v. Doyens,* 59 Or. 366, 116 P. 1063, cited by the plaintiff, is not contrary to the authorities just reviewed. In that case, the lien claimant did not seek relief against the land. He confined his lien claim to the improvement he had installed. The words of the McFeron decision are: "Plaintiff does not ask relief against the land." See, also, *Kezartee v. Marks & Co.,* 15 Or. 529, 16 P. 407.

█ Only those are entitled to mechanics' or materialmen's liens who can match the requirements of § 67-101, O.C.L.A., which does not grant a lien upon a lease-

hold upon any different terms than upon a freehold. In both instances the claimant must prove that he performed labor or supplied material which became part of the building upon which he claims a lien. The trade fixtures upon which much of the plaintiff's labor was expended never became, and were never intended to become, part of the structure. That being true, no lien can be had for that part of the claim; and since that part cannot be separated by anything contained in the lien notice from the balance of the account, the lien must fail.

Since we have held the lien invalid for the reason just expressed, it is unnecessary for us to consider the other attacks made by the defendant upon the lien. Because the lien is invalid, the part of the attacked decree which foreclosed it must be vacated.

The above, however, does not fully dispose of the assignment of error under consideration. It reads: "The court erred in refusing to dismiss the suit." The question now occurs, should this court, because the lien is invalid (1) order the dismissal of the suit; (2) vacate the decree of foreclosure but sustain the judgment which the plaintiff recovered for the value of his services and materials; (3) remand the cause for trial as an action at law; or (4) adopt some other course.

██ Section 67-109, O.C.L.A., provides:

"Suits to enforce the liens created by this act shall be brought in the circuit courts, and the pleadings, process, practice, and other proceedings shall be the same as in other cases."

The section clearly authorizes the entry of a judgment against the person or persons who ordered the performance of the work or the delivery of the material. See

*James A. C. Tait & Co. v. Stryker,* 117 Or. 338, 243 P. 104. Going on, § 67-109 says:

> "In all suits to enforce any lien created by this act, all persons personally liable, * * * may be made parties; * * *. The proceedings upon the foreclosure of the liens created by this act shall be, as nearly as possible, made to conform to the proceedings of a foreclosure of a mortgage lien upon real property."

Thus, although a mechanic's and materialman's lien was unknown to the common law, nevertheless, after a claimant has established his right to such a lien, there is available to him as the means of enforcing it all of the machinery of our courts of equity.

The statute which authorizes mechanics' and materialman's liens was enacted in 1885. In 1893 this court announced the decision entitled *Ming Yue v. Coos Bay R. R. Co.,* 24 Or. 392, 33 P. 641, which was an appeal from a decree for the defendant rendered in a suit for the foreclosure of a mechanic's lien. The decree was entered after a demurrer to the complaint had been sustained. We now quote from the decision:

> "The contention for the plaintiffs is, that even if the complaint fails to set out a case for equitable cognizance, it sufficiently states a cause of action for the recovery of the money due for labor performed, and hence, that the court erred in dismissing the suit. * * * In this state the distinction heretofore existing between forms of action at law is abolished (section 1, Hill's Code), but proceedings in equity are still kept distinct, from actions at law. (Code, chapter V, 'Suits in Equity.') In this respect our code system differs from the code system of many other states. * * * When, therefore, the plaintiffs, being in equity, failed to state in their complaint a cause of suit, notwithstanding

they may have stated a cause of action, the court had no jurisdiction to retain and try such action, but was bound to dismiss the suit, and leave the plaintiffs to prosecute their action, if they have one at law."

In 1898 *Denny v. McCown,* 34 Or. 47, 54 P. 952, was decided. It was an appeal by the defendant from a decree for the plaintiffs, entered in a suit for the foreclosure of a deed which was intended as a mortgage. After the decision had held the mortgage void, it said:

"The rule that a court of equity, obtaining jurisdiction of a cause for one purpose will retain it until complete justice is administered can have no application to the case at bar; for, the jurisdiction to foreclose the trust deed being dependent upon the existence of the lien, it could not be legally exercised, on account of the invalidity of the instrument, and, the plaintiff having a complete and adequate remedy at law upon the note, the court was powerless to award a money judgment thereon: * * *. It follows that the decree must be reversed, and the suit dismissed."

When the Ming Yue and the Denny cases were decided, the section of our laws which, as since amended, is § 9-102, O.C.L.A., read as follows:

"Bills of revivor and bills of review, of whatever nature, exceptions for insufficiency, impertinence, or irrelevancy, and crossbills, except as hereinafter mentioned, are abolished; but a decree in equity may be impeached and set aside, suspended, avoided, or carried into execution by an original suit: and in an action at law, where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material for his defense, he may, upon filing his answer therein, also as plaintiff, file a complaint in equity, in the nature of crossbill, which shall stay the pro-

ceedings at law, and the case thereafter shall proceed as in a suit in equity, in which said proceedings may be perpetually enjoined by final decree, or allowed to proceed in accordance with such final decree. The mode of proceedings in a suit, from the commencement to the determination thereof, and thereafter until satisfaction or performance of the decree be had, shall be as provided in this title, and not otherwise."

See § 391 B. & C. Codes and Statutes of Oregon.

General Laws of Oregon, 1917, Chapter 95, amended that provision by expanding and liberalizing the powers of equity courts. The part of the amendment material to the issues before us is the following:

"No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account. Testimony taken before the amendment and relevant to the issue in the law actions shall stand with like effect as if the pleadings had been originally in the amended form."

See § 9-102, O.C.L.A. Section 391 B. & C., as amended by the 1917 enactment, is now § 9-102, O.C.L.A.

It is reasonable to infer that one of the purposes of the 1917 amendment was to enable our courts to determine all of the issues pertaining to a transaction without shunting the parties back and forth through a succession of law suits. Evidently the legislative branch wished to render it unnecessary in the future to dismiss, for the reasons stated in the Ming Yue and the Denny decisions, suits akin to them.

According to 19 Am. Jur., Equity, § 196, p. 168:

"The prevailing practice, in the event that a proceeding has been instituted in the wrong court, is to transfer the case to the other tribunal,—that is, a cause will not be dismissed, but will be trans-

ferred from the law court to the equity court, where, being of equitable cognizance, it has been instituted in the court of common law. In like manner, a case when instituted in the wrong court will be ordered to be transferred from the equity court to the law court.''

This court promptly discerned and gave effect to the purpose of the 1917 amendment. For instance, in *Simpson v. First National Bank,* 94 Or. 147, 185 P. 913, in an opinion written by Mr. Justice Harris, the court said:

"The proceeding brought by the plaintiff is an action at law and not a suit in equity; and, since the court cannot compel an indorsement of the note in an action at law, but can do so only in a suit in equity, it necessarily follows that, since the amended complaint is in its present condition insufficient as a complaint in equity, the trial court correctly sustained the demurrer to the complaint even though it be assumed that the plaintiff is entitled in a proper proceeding to compel the bank to indorse the note. But it is said in Section 390, L. O. L., as amended by Chapter 95, Laws 1917, that—

'No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleading to obviate any objection on that account.'

"It is possible that the plaintiff can so amend her complaint as to entitle her to the indorsement of the bank and to a judgment against it as an indorser, and hence the cause will be remanded with permission granted to the plaintiff to amend her complaint within the authority of Chapter 95, Laws 1917: * * * ."

*Cole v. Canadian Bank of Commerce,* 115 Or. 456, 239 P. 98, declared:

"The plaintiff invokes the rule that, even if he mistook his remedy, the court should not have dis-

missed the action. This contention, on the part of the plaintiff, must be sustained. Our statute expressly provides that a litigation shall not be dismissed because brought on the wrong side of the court: Section 390, Or. L.; McCann v. Oregon Scenic Trips Co. et al., 105 Or. 213 (209 Pac. 483); Simpson v. First National Bank, 94 Or. 147 (185 Pac. 913). It was the duty of the Circuit Court to have retained the case and decided it upon its merits, even if the cause should have been tried in equity."

We take the following from *Nelson v. Smith,* 157 Or. 292, 69 P. 2d 1072:

"We agree with appellant that equity had no jurisdiction in the instant case. It does not follow, however, that the circuit court had no power to enter a personal judgment against defendant since, by a general appearance, he had submitted to jurisdiction over his person and there was a waiver of trial by jury. The mere fact that plaintiff had mistaken his forum did not justify a dismissal of the case.

Section 6-102, Oregon Code 1930, provides:

'No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have the right to amend his pleadings to obviate any objection on that account.'

In construing the above section of the statute, this court in *Spencer v. Wolff,* supra, which was quoted with approval in *Weith v. Klein,* 136 Or. 201 (298 P. 902), said:

'The circuit court had jurisdiction of the cause regardless of the question of whether or not it is a suit in equity or an action at law. No proceeding in the circuit court should be dismissed because addressed to the wrong side of the court. The cause should be disposed of according to its merits in the proper forum notwithstanding the litigants may have mistaken their appropriate remedy.' "

We come now to decisions in cases which sought the foreclosure of liens and written since the adoption of the 1917 amendment. In *McCann v. Oregon Scenic Trips Co.,* 105 Or. 213, 209 P. 483, the complaint averred that the defendant had purchased from the plaintiff automobile accessories worth $478.14, installed them upon an automobile truck described in the complaint, failed to pay the purchase price, and that the plaintiff had filed a claim for lien in the office of the county clerk of Clatsop County. The defendant demurred to the complaint on the grounds that the court had no jurisdiction "of the subject of the action" and that the complaint did not "state facts sufficient to constitute a cause of action." After the demurrer had been overruled, the defendant refused to plead further and the court entered a decree which granted the plaintiff judgment for $478.14, an attorney fee and ordered the foreclosure of the lien. The defendant appealed. The decision of this court said:

"We may view this proceeding either in the aspect of an action at law or else as a suit to foreclose a lien * * * .

"The demurrer may be disregarded as to the first assignment, because the Circuit Court had jurisdiction of the subject of the action in that it had a right to try the kind of proceeding, whether it be an action or a suit. * * * The complaint contains enough matter in the second and third paragraphs to sustain a cause of action for goods sold and delivered, the obligation of the defendant to pay for them being one implied by law. * * * The pleading, therefore, did contain a sufficient statement of a cause of action, and the demurrer, contending that it did not, was properly overruled."

The court held the lien invalid because, although the applicable statute required the lien notice to be filed

in the county in which the labor and materials were expended, the complaint did not allege that the labor and materials were furnished in Clatsop County, that being the county in which the lien notice was filed. Then the decision said:

> "For this reason, the complaint does not state enough to constitute a cause of suit as distinguished from a cause of action: * * * ."

Having reached that conclusion, the court was confronted with the problem as to whether the suit should be dismissed. It said:

> "Formerly, as stated in Ming Yue v. Coos Bay R. R. Co., 24 Or. 392 (33 Pac. 641), it was the rule that 'under the provisions of the Oregon law retaining the distinction between suits in equity and actions at law, though abolishing the difference in the forms, a complaint for the foreclosure of a mechanics' lien, which does not state a cause of suit, cannot be retained and treated as an action at law to recover money.' We have seen that there is enough in the plaintiff's initial pleading to support a judgment at law, but not enough, however, to serve as a foundation for a decree in equity. We cannot turn him out of a court of law, for the reason that he has stated a cause of action at law. The aspect of his case contemplating equitable relief can well be ignored as surplusage, because of insufficiency of his complaint for that purpose. Moreover, since the decision of the Ming Yue case, Section 390, Or. L., has been amended and now contains this provision:
>
> 'No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account.' "

Although the lien was held invalid, the proceeding was not dismissed. The author of the opinion, Chief Jus-

tice BURNETT, believed that the judgment should be affirmed, but the other members of the court who heard the appeal felt that, since the proceeding was deemed in the Circuit Court as a suit in equity, the defendant, that is, the appellant, had not had an opportunity to try it as an action at law. Accordingly, the decree was vacated and the cause was remanded for trial as an action at law.

In *Brakebush v. Aasen,* 126 Or. 1, 267 P. 1035, the plaintiff was a logger who brought suit, not only for himself but also for twelve assignors, all of whom claimed that wages which they had earned in the production of logs remained unpaid. The prayer sought judgment for the wages, the establishment of a lien and the foreclosure of the latter. The employer had become insolvent and the defendant was the receiver of the employer's assets. After demurrer to the complaint had been overruled and the defendant had refused to plead further, the defendant was adjudged in default, but, before entering a decree, the Circuit Court heard testimony, at the close of which it awarded the plaintiff judgment for $2,140.20, the foreclosure of the lien, an allowance of $350 as compensation for plaintiff's attorney and a further allowance of $143, cost of the preparation of the lien notice. Because the lien notice described land which did not exist, this court held the lien invalid. After it had done so, the court took notice of the 1917 amendment and, finding that the complaint stated a good cause of action for wages earned, affirmed the judgment for the amount of the wages, but eliminated the attorneys' fees and costs of preparation of the lien notices. The decision pointed out that the defendant's only defense was based upon the invalidity of the lien and that the defendant had

not controverted the averments concerning the labor performed by the workmen and the failure of the employer to have made payment. In other words, the suit presented no issue concerning the amount awarded by the judgment.

*Johnson v. Shasta View Lumber Co.,* 129 Or. 469, 278. P. 588, was concerned with a suit for the foreclosure of a timber owner's lien upon lumber manufactured from logs cut from his land. (See § 67-1303, O.C.L.A.). The plaintiff was the timberland owner; the defendant, Shasta View Lumber Company, was the manufacturer of the lumber upon which the lien was sought, and two other defendants were creditors of the Shasta View Company who sought to have the court declare unconstitutional § 67-1303 thereby defeating the alleged lien. The Shasta View Company demurred to the complaint and after the demurrer was overruled refused to plead further. Thereupon judgment and decree were rendered in favor of the plaintiff and against the Shasta View Company. From that decree the two defendants, whom we have described as creditors of the Shasta View Company, appealed. Upon their failure to serve notice of appeal upon the Shasta View Company, the plaintiff moved to dismiss the appeal. In sustaining the motion, this court, in referring to the plaintiffs, that is, the lien claimants, said:

"Plaintiffs are entitled to maintain that judgment because defendant Shasta View has not appealed, and appellants are not concerned in that judgment. They might be sufficiently interested in the decree to question its validity if they had set up a sufficient foundation for a lien. Plaintiffs have a right to the benefit of their judgment even if their lien should be set aside."

We interrupt the quotation to call attention to the sentence just quoted. Going on, the decision said:

"Since the amendment of 1917, a case must not be dismissed because instituted on the wrong side of the court: Or. L., § 390. So if this court should determine appellants are correct in their contention that plaintiffs' lien is invalid plaintiffs' suit should not be dismissed nor the judgment against defendant Shasta View reversed. The court could modify the decree so as to avoid plaintiffs' lien. Defendant Shasta View is therefore vitally interested in the result of the appeal. If plaintiffs' lien should be canceled, and the sale of the lumber annulled, Shasta View would suffer loss of the benefit of the credit."

In *Van Lydegraf v. Tyler,* 128 Or. 236, 271 P. 740, 273 P. 719, and *Dimitre Electric Co. v. Paget,* 175 Or. 72, 151 P. 2d 630, the briefs of the appellants, who were the owners, contained no assignment of error which attacked the amount awarded the lien claimant for the work which he had performed and the materials which he had supplied. The attacks were confined to the validity of the liens. The Van Lydegraf decision, after holding that the evidence failed to establish the lien, vacated the part of the decree which ordered the foreclosure of the lien and then, after stripping from the judgment all sums which arose out of the lien, such as the attorney fee, the sum paid for filing the purported lien notice and the sum allowed for preparing the lien notice, affirmed the part of the judgment which represented the value of the plaintiff's work and materials. The Dimitre Electric Company decision held the lien invalid because the claimant had lumped in its lien notice, which described twenty houses, the amounts which it had earned under separate contracts for its services upon each of the houses. After

it had vacated the decree of foreclosure, it took the same course in regard to the judgment as in the Van Lydegraf decision.

■ The above will suffice as a review of our former decisions. We think it is manifest that § 9-102, O.C. L.A., prohibits the dismissal of a suit on account of a plaintiff's inability to establish an alleged lien if the complaint, in addition to averring the lien and praying for its foreclosure, states a good cause of action for labor performed or materials supplied. If the sum for which judgment is sought is free from dispute, judgment for that amount may be entered even though the plaintiff fails to prove his lien or the court holds it invalid. If the value of the labor or materials was in controversy but the defendant waived trial by jury, the court may enter judgment for the proper amount. If trial by jury was not waived and the value of the labor or materials was controverted, the cause should be transferred to the law side of the court.

■ We think it is clear that it is not the duty of this court to enter an order for the dismissal of this suit. The invalidity of the lien and the consequent failure of the plaintiff to have established a basis for equitable relief does not warrant the dismissal of his cause. He alleged, and, according to the report of the referee as approved by the Circuit Court, proved a good cause of action. Accordingly, we reject the first assignment of error as lacking in merit.

We quoted in a preceding paragraph all of the five assignments of error. The remaining four, so far as they call for an expression of our views, can be considered jointly.

■ We pointed out that the parties joined in a stipulation that this cause should be tried by a referee and

that the order of reference bears the approving signature of counsel for both plaintiff and defendant. The stipulation and the order of reference were fully warranted: §§ 5-601 to and including 5-612 and § 9-202, O.C.L.A. As is evident from those sections of our laws, referees may be appointed in law actions as well as in equity suits. We have mentioned the fact that the referee's findings were adopted by the Circuit Court and that the attacked judgment is based upon those findings. Since the judgment is challenged, the question presents itself: Should we deem the findings as those of a chancellor, and thereby give them only an advisory effect, or should we deem them the findings of a law court and yield to them the controlling effect of a jury's verdict.

According to the order of reference, there was assigned to the referee "the above entitled cause." "Cause" is the word which was employed in the order of reference. It was used more than once. Neither the word "action" nor the word "suit" appears in that order. Frequently the words "cause" and "case" are used synonymously. It seems reasonable to infer that the word "cause" was selected in order to make it clear that the entire controversy was assigned to the referee.

 A referee, unless his powers are restricted by the order of reference, is authorized to (1) rule upon the admissibility of evidence, (2) pass upon motions for the amendment of the pleadings, (3) prepare findings of fact and conclusions of law, and (4) resolve all other procedural issues that arise in the course of the trial. The referee performs the same duties that the judge of the court would have performed had he not made

the order of reference: § 5-608, O. C. L. A., and 45 Am. Jur., Reference, § 22, p. 558.

When a party stipulates for a trial before a referee, he does not irretrievably commit himself to the findings which the referee may enter. Our statutes afford him the privilege of presenting to the Circuit Court objections to the referee's rulings and findings. Section 5-612, O.C.L.A., says:

> "The court may affirm or set aside the report either in whole or in part. * * * Upon a motion to set aside a report, the conclusions thereof shall be deemed and considered as the verdict of a jury."

In a law action the findings, both in the Circuit Court and this court, are deemed tantamount to the verdict of a jury: *Tribou v. Strowbridge,* 7 Or. 156, and *Shell Company of California v. O'Reilly,* 121 Or. 215, 253 P. 1046. But in equity suits the report is merely advisory, and, upon appeal, it is the duty of this court to try the suit de novo, notwithstanding the referee's findings: *O'Leary v. Fargher,* 11 Or. 225, 4 P. 330, and *Nessley v. Ladd,* 29 Or. 354, 45 P. 904.

In presenting its argument in behalf of the four remaining assignments of error, which we are considering jointly, the defendant in several instances, argues that the findings of fact erroneously resolved fact issues which governed the award and size of the judgment. For instance, the defendant's brief contains statements such as: "No recovery for defective workmanship. * * * The court erred in refusing to give judgment to appellant on its counterclaim." Those propositions, which are based upon the defendant's disagreement with the findings of fact, demand that we determine whether findings pertaining to an award of judgment, after it developed in the trial that the

plaintiff was entitled to no equitable relief, are controlling or are merely advisory. It is well to take note of the procedure to which the defendant resorted in the Circuit Court after the referee had filed his report.

When the referee's report was submitted to the Circuit Court, the defendant filed a paper which it termed a motion. The latter not only sought dismissal of the suit for reasons expressed in the motion, but also presented a series of objections to the referee's findings. The motion to dismiss was based in part upon "the ground that included in said alleged mechanic's lien were and are unsegregated nonlienable items for which liens cannot be claimed under the laws of Oregon." As we have held, the lien is invalid because it contained in unsegregational forms lienable and nonlienable items. Both the referee and the Circuit Court should have held it invalid. Notwithstanding the fact that the defendant's motion deemed the lien invalid, it did not ask that the cause be transferred to the law side of the court and that it be tried from there on as a law action. We add that after defendant had become satisfied from the evidence that the lien was invalid, it did not object to the jurisdiction of equity over the remaining phases of the controversy.

Possibly the defendant's failure to move for a transfer to the law side of the court was due to a belief that when equity has once taken hold of a controversy, it retains jurisdiction and grants legal relief even though the plaintiff wholly failed to establish any basis for equitable jurisdiction. This court, however, held in *Oregon Growers' Co-operative Association v. Riddle*, 116 Or. 562, 241 P. 1011:

"Equitable rights must be both averred and proved before purely legal rights will be determined by a court of equity."

In *Multnomah County v. Portland Cracker Co.*, 49 Or. 345, 90 P. 155, that rule was applied in the following manner:

> "The rule that a court of equity obtaining jurisdiction of a cause for one purpose will retain it until complete justice is administered can have no application to this case; for, the jurisdiction being dependent upon the alleged necessity to correct a record which, in one instance, was not a record at all and was void upon its face, and, in the other instance, had been canceled by a competent court before the commencement of this suit, the court was powerless to render a money judgment for the amount of the tax: * * *."

In the present instance, the plaintiff alleged a basis for equity jurisdiction, but failed to prove it.

Thus, although the defendant could have embraced the procedure authorized by § 9-102, O.C.L.A., as construed and applied in decisions such as *McCann v. Oregon Scenic Trips Co.*, supra, it did not do so. It made no motion to transfer to the law side. To the contrary, the motion filed by the defendant said:

> "Defendant Town Tavern moves the court that said findings of fact and conclusions of law be modified as follows:
>
> "A. By deducting therefrom value of nonlienable items.
>
> "B. By deducting therefrom the value of all extra items or changes from the specifications made a part of the contract which were performed either by said plaintiff or subcontractors * * * without having prior written authorization therefor * * *.
>
> "C. By making allowance for defective work performed by said contractor or subcontractors working under his supervision for which allowance

was not made in said findings of fact and conclusions of law * * *.

"D. By reducing the amount found owing to plaintiff to the reasonable value of the labor and materials furnished by him.

"E. By making allowance for defendant Town Tavern's losses and damages attributable to the undue delay of said contractor in completing his performance of said contract."

 Thus, we see that when the referee's report was pending for disposition before the Circuit Court, the defendant, although contending that the lien was invalid, with the consequent unmentioned result that equity had no jurisdiction over the cause, did not ask the chancellor to vacate the bench, but requested him to determine the merits of plaintiff's demand for judgment. In short, the defendant, far from objecting to equity's jurisdiction over the demand for judgment, consented to it by affirmatively praying that the chancellor determine the condition of indebtedness between the parties.

The situation just mentioned renders apt the following words which were spoken in *Hansen v. Bogan,* 127 Or. 399, 272 P. 668:

"As a first proposition of law, the defendant asserts that the court should have submitted this case to a jury for trial as a law action, instead of retaining equitable jurisdiction thereof. We have seen that not only the plaintiff, but the defendant, submitted himself to the equitable jurisdiction of the court and sought affirmative relief. Mindful of this fact, we direct attention to the case of Gillihan v. Cieloha, 74 Or. 462 (145 Pac. 1061), where Mr. Justice McBride wrote:

"'In any case, both parties having submitted themselves to the equitable jurisdiction of the court

and asked for affirmative relief; and, having chosen to litigate their rights in this forum, we will not seek specious reasons for declining jurisdiction.'

"This question was also at issue in Spencer v. Wolff, 119 Or. 237 (243 Pac. 548), where this court held, in an opinion by Mr. Justice Coshow, that the Circuit Court has jurisdiction of a proceeding for discovery and accounting of partnership funds, whether it be a suit in equity or an action at law, and that, in view of Section 390, Or. L., such proceeding will not be dismissed because addressed to the wrong side of the court."

From *Oldenburg v. Claggett*, 142 Or. 238, 20 P. 2d 234, we take the following:

"These contentions, appearing in the pleadings, present an issue either in equity or at law. The defendants did not demand a jury trial, but submitted their cause to the court sitting in equity and in fact asked the court to give them such general relief as the 'court might deem just and equitable.' When the defendants asked for equitable relief, and submitted their cause to the equitable jurisdiction of the court, they were precluded from raising the question of the court's jurisdiction. Municipal Security Co. v. Baker County, 33 Or. 338 (54 P. 174); O'Hara v. Parker, 27 Or. 156 (39 P. 1004); Kitcherside v. Myers, 10 Or. 21.

"There is a provision in our statute which we must take into consideration:

" ' * * * No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have the right to amend his pleadings to obviate any objection on that account. * * *' Oregon Code 1930, § 6-102."

A party who wishes to contend, upon appeal, that equity had no jurisdiction to render the decree which he attacks, must make timely objections in the

trial court unless the subject is wholly outside of equity's jurisdiction. In the absence of such objections, he will be deemed to have waived them: *Buckman v. Hill Military Academy,* 190 Or. 194, 223 P. 2d 172; *Lewis v. Shook and Lee et al.,* 185 Or. 67, 201 P. 2d 908; *Buckman v. Hill Military Academy,* 182 Or. 621, 189 P. 2d 575; *Mogul Transportation Co. v. Larison,* 181 Or. 252, 181 P. 2d 139; and 30 C.J.S., Equity, § 88, p. 451. As we have shown, no objection was made to the jurisdiction which the chancellor was exercising.

■ The cause was tried in the very manner that the defendant voluntarily chose. The defendant joined in the stipulation for trial before a referee. The challenged findings are those of the tribunal which was appointed in accordance with the defendant's wishes. Had the cause been transferred to the law side of the court when it developed that the lien was invalid, the same individual would have continued upon the bench. Even the nomenclature by which he and his tribunal were designated would not have been changed. It will be perceived by reverting to the defendant's objections to the referee's findings of fact that the defendant did not ask for a retrial of the cause, but only for a change in the amounts awarded to the plaintiff. Since the defendant had stipulated for trial by referee, it was not entitled to some other form of trial, such as trial by jury.

■ In view of the fact that the parties deemed that the proceeding was on the equity side of the court, and in view of the further fact that both parties by affirmative action asked the chancellor to determine all issues, we shall deem the challenged findings as those of an equity court. We will regard them, not as controlling, but as advisory.

We have read the entire transcript of evidence with care and have bestowed similar attention upon the numerous exhibits. To set forth herein our analysis of the testimony and of the extensive exhibits introduced by the parties would greatly prolong this opinion. We shall content ourselves with the statement that it is our conviction that all issues of fact were correctly resolved by the referee. We adopt his findings, bearing as they do the approval of the Circuit Court, as our own.

In arguing the third assignment of error, the defendant urges that the judgment is too large. It contends that, notwithstanding the plaintiff "was not entitled to recover for extra items not authorized in writing," the attacked judgment contains awards for extra items for which the defendant gave no written authority. A preceding paragraph of this opinion quotes the section of the contract signed by the plaintiff and the defendant upon which the defendant's argument is based. The judgment includes no award for any extra work performed by the plaintiff's workmen which was not authorized in the prescribed manner, but it includes awards for work performed and material supplied by plumbers, painters and electrical contractors not in response to the plans and specifications and which were not authorized in writing. The defendant itself chose those contractors and itself directed them what to do. In many instances officials of the defendant stood over the plumbers, electricians, etc., and supervised them in the performance of their labors. The contract between the plaintiff and the defendant subjected those contractors to the plaintiff's general supervision so that all of the work would co-ordinate, conform to a schedule and proceed expeditiously. The

plaintiff was the common paymaster and keeper of accounts. As we have seen, he was paid by the defendant on a cost-plus basis. There is no contention that any work was performed or any material delivered for which the defendant did not, in fact, give orders. It is our belief that the provision of the contract upon which the defendant relies did not govern those extra items: *Pippy v. Winslow,* 62 Or. 219, 125 P. 298.

The above, we believe, disposes of every issue which requires a statement of our views. It follows from the foregoing that the decree of the Circuit Court must be vacated. It also follows that the judgment for the value of the labor and materials is without error. All sums allowed for the preparation of the lien notice, the filing of the lien and compensation for the plaintiff's attorney must be disallowed. The amount allowed as compensation for the referee is approved. The defendant (appellant) is entitled to costs and disbursements.

The cause is remanded to the Circuit Court with instructions to enter a judgment in harmony with the above.