Argued August 27, affirmed October 22, 1979

ABAJIAN,
*Respondent,*
*v.*
HILL, et ux,
*Defendants,*
*and*
FENNELL, et ux,
*Appellants.*

(No. 77-0951, CA 13171)

601 P2d 837

Thomas E. Wurtz, Springfield, argued the cause for appellants. With him on the brief was Wurtz, Logan & Logan, Springfield.

Richard L. Gassman, Springfield, argued the cause and filed the brief for respondent.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

TANZER, P. J.

**TANZER, P. J.**

Defendants appeal from a decree foreclosing a mechanic's lien on defendants' property. The trial court found that the plaintiff's services in performing his contract with defendant by providing drop boxes and hauling them away when filled with debris were lienable as part of preparation of the land for the construction of an improvement. The improvement consisted of laying rock for a log dump. The court entered a judgment of $2,900, the contract price, for plaintiff. We affirm.

Mechanics' liens were unknown to common law. One whose work benefited land could not claim the security of a common law artificer's lien which allowed the retention of possession of a thing belonging to another until payment was made for work done regarding that thing. Because the land which was benefited remained in the owner's possession, there was nothing in the laborer's or materialman's possession upon which to claim a lien. Mechanics' liens were statutorily created to enable the laborer or materialman to encumber land improved by his labor or materials and thus provide him protection akin to that given by artificers' liens. *See* A. Lewis, *The Lien and its Perfection*, 3 Will L J 73 (1964).

Because mechanics' liens exist only by virtue of statutes, one can claim a lien only if the work is that which is recognized by statute as entitling him to a lien. The Oregon Supreme Court stated in *Ward v. Town Tavern, et al.*, 191 Or 1, 14, 228 P2d 216, 42 ALR2d 662 (1951):

> "Mechanics' and materialmen's liens are purely statutory and are obtainable only by those who can meet the statutory requisite. Like claimants for Cinderella's slipper, an exacting demand must be met by applicants for a lien, and all who cannot conform are rejected. * * *"

ORS 87.010(2) provides for a mechanic's lien:

> "Any person who engages in or rents equipment

[697]

for the preparation of a lot or parcel of land, or improves or rents equipment for the improvement of a street or road adjoining a lot or parcel of land at the request of the owner of the lot or parcel, shall have a lien upon the land for work done, materials furnished or equipment rented."

"Preparation" is defined by ORS 87.005(9):

" 'Preparation' includes excavating, landscaping, demolition and detachment of existing structures, leveling, filling in, and other preparation of land for construction."

Preparation must be for "construction," which is defined in ORS 87.005(2):

" 'Construction' includes creation or making of an improvement, and alteration, partial construction and repairs done in and upon an improvement."

ORS 87.005(5) defines the term "improvement":

" 'Improvement' includes any building, wharf, bridge, ditch, flume, reservoir, well, tunnel, fence, street, sidewalk, machinery, aqueduct and all other structures and super-structures, whenever it can be made applicable thereto."

The defendants contend that the plaintiff's work did not conform to the statutory requisite. They argue that the act of providing drop boxes and hauling them away does not constitute preparation of the land for the construction of improvements. They also argue that creation of a log dump by clearing the land and laying down rock was not construction of an improvement as that term is used in the statute.

## PREPARATION

■ ■ First, we determine whether providing and hauling drop boxes is an act of "preparation" as that term is used in ORS 87.005(9). Particularly in an age of increasing specialization and proliferating subcontracting, it is not proper to examine each mechanic's work as an isolated function. Rather, it must be analyzed as one part of the larger function in the development to which it contributes. Thus, the Supreme Court in *Robison v. Thatcher*, 252 Or 603, 605, 451 P2d 863

(1969), in holding that one who excavated land preparatory to construction of a house was entitled to a mechanic's lien under the prior mechanic's lien statute, noted that "the purpose of the mechanics' lien law is best served by treating all the component undertakings in the construction of the finished building as lienable work." The question, then, is whether the larger project of clearing the land, of which the provision and hauling of drop boxes is a part, is "preparation" of the land. The question fairly answers itself.

A large pile of debris containing wreckage of a house and refuse from a shake mill covered a large portion of the land on which the log dump was to be constructed. The mill's operation also generated a large amount of scrap which if left at the site would have interfered with construction of the log dump. Before the log dump could be constructed, it was necessary to clear the site. The plaintiff's task in the clearing process was to provide drop boxes into which the debris was loaded and then to haul the boxes away from the land when filled. His was the final step in preparing the land for construction and a "component undertaking" in the plan of improvement.

The statutory definition of "preparation" lists various acts which constitute preparation. The definition concludes with the phrase, "and other preparation of land for construction." In light of this broadly worded phrase and the Supreme Court's generous interpretation of the lien laws in *Robison*, we conclude that clearing land is preparation of land for construction. Like the listed terms in the definition, clearing the land is a necessary step in the undertaking of an improvement. Because the plaintiff's work in removing the debris from the land was a necessary part of this clearing process, his work is preparation of the land within the meaning of ORS 87.005(9).

## IMPROVEMENT

Next, we determine whether the log dump was an improvement within the meaning of ORS 87.005(5).

"Log dump" is not one of the terms listed in the statute. Therefore, to be an improvement it must come within the meaning of the phrase "other structures and super-structures." That general phrase is apparently intended to refer to other projects of a nature similar to those which are specifically listed in the statute, that is "building, wharf, bridge, ditch, flume, reservoir, well, tunnel, fence, street, sidewalk, machinery [or] aqueduct." In the context of lien law, the pertinent common characteristics of those improvements are that they are additions to the land of a relatively permanent nature which increase the value or utility of the land. Thus, the statutory phrase "other structures" is more flexible than Cinderella's slipper; it covers improvements with those characteristics.

The development of this land for a log dump has those characteristics. A two-foot layer of quarry rock was laid, creating a solid, permanent base upon which logging trucks could drive and a log loader could be stationed. Without the rock base the heavy equipment would sink because it had been a very muddy site. The project is analogous to the laying of a street, which is specifically listed in the statute as an improvement, or of a driveway, held to be a structure by the Supreme Court in *McCormack v. Bertschinger*, 115 Or 250, 237 P 363 (1925). The laying of rock for a log dump in this case was an addition or change to the land of a permanent nature which increased its value and utility. For all these reasons, the log dump is an "other structure" and an improvement within the meaning of ORS 87.005(5).

Affirmed.