# SKYPORT PROPERTIES OF OREGON, LTD.,

*Appellant - Cross-Respondent,*

*v.*

# MULTNOMAH COUNTY DRAINAGE DISTRICT NO. 1,

a municipal corporation,

*Respondent - Cross-Appellant.*

# MULTNOMAH COUNTY DRAINAGE DISTRICT NO. 1,

a municipal corporation,

*Third Party Plaintiff - Respondent - Cross-Appellant,*

*v.*

# Robert A. GRAY,

Hawkin Au, John R. Bentley,

*Third Party Defendants - Appellants - Cross-Respondents,*

*and*

# THE OREGON BANK

(nka Security Pacific Bank of Oregon),
United States National Bank of Oregon
and National Video, Inc., (nka Rentrak Corporation),

*Third Party Defendants - Cross-Respondents.*

(A8902-00962; CA A65993)

844 P2d 909

Harlan Jones, Portland, argued the cause for Skyport Properties of Oregon, Ltd., Robert A. Gray, Hawkin Au, John R. Bentley, The Oregon Bank, United States National Bank of Oregon and National Video, Inc. On the briefs were E. Andrew Jordan and Bolliger, Hampton & Tarlow, Portland.

Carlton W. Hodges, Portland, argued the cause for Multnomah County Drainage District No. 1. With him on the briefs was David Gernant, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Skyport Properties of Oregon, Ltd. (plaintiff), and its general partners, Gray, Au and Bentley, appeal from a judgment foreclosing a statutory lien on the partnership property for $100,185.71. Defendant cross-appeals, assigning error to the court's dismissal of its counterclaim for breach of an implied-in-fact contract. We reverse on appeal and affirm on cross-appeal.

Plaintiff is a limited partnership that owns real property abutting the Columbia Slough, the principal drainage ditch within Multnomah County Drainage District No. 1 (defendant). Before 1968, the Skyport property was undeveloped. In 1968, plaintiff was considering developing that property as an industrial park. In anticipation of development, it entered into an agreement with defendant that allowed plaintiff to install culverts in the slough and to build a road over them to provide access to the Skyport property. The agreement provided that plaintiff would keep the culverts in good working order and that, if it failed to do so, defendant could, after complying with the provisions of ORS 547.410 *et seq*, acquire a lien on the property under ORS 547.420 for the costs "of repairing, cleaning or replacing the culvert or other structure or otherwise removing the obstruction." Defendant claims that the parties also agreed orally that, when it became necessary, plaintiff would construct a bridge in place of the culverts. Plaintiff installed the culverts and road and then dedicated the road and culverts to the City of Portland.

By 1988, development had increased in the drainage basin to such an extent that defendant became concerned that artificial restrictions on the flow of water in the slough were posing a flood threat. Portland Development Commission, City of Portland and defendant decided to take actions that they deemed necessary to reduce restrictions in the slough before the next rainy season in order to increase the rate of stream flow and lower the risk of flooding. Those actions included the removal of the culverts installed by plaintiff. On May 11, 1988, plaintiff was sent a letter informing it that the culverts had become inadequate to maintain a suitable flow of water. The letter did not mention replacing the culverts with a bridge. The parties discussed the situation, but plaintiff refused to take responsibility for replacing

the culvert crossing. The three agencies then entered into an intergovernmental agreement in August, 1988, by which defendant agreed to supervise, and all agreed to share the cost of, removing the culverts and replacing them with a bridge. Defendant agreed to pay one-third of the cost.

After engineering studies, specifications and bidding were completed and $80,000 of expenses had been incurred, defendant sent plaintiff a notice on January 30, 1989, notifying it of a clogged and obstructed condition. It advised plaintiff that, if it did not "repair, clean and grade the slough" and cause it to be placed in a "proper and efficient condition" within 10 days, defendant would remedy it and file a lien against plaintiff's property pursuant to ORS 547.420 for the cost of "repair and cleaning of the slough." When plaintiff did nothing, defendant proceeded to remove the culverts and to build a bridge over the slough. It then filed a lien against plaintiff's property for $105,185.71, its share of the cost of the project.[1]

Plaintiff filed this action, seeking a declaration that the lien is invalid and an injunction against its enforcement. Defendant counterclaimed for foreclosure of the lien and for breach of an implied contract.[2] Defendant did not allege in its lien foreclosure counterclaim that the cost of building the bridge was a part of the lien. It alleged only that plaintiff "failed and refused to repair, clean or grade the slough or remove the obstruction," thereby repudiating its contract. It sought foreclosure of its statutory lien for $105,185.71, which amount includes defendant's share of the cost of building the bridge.

---

[1] Although defendant filed a lien for $105,185.71 and counterclaimed for that amount, the court entered a judgment foreclosing a lien for $100,185.71. It is unclear how that figure was determined.

[2] Defendant also filed a third-party complaint against Webber, a limited partner of Skyport, who was later dismissed; Au, Gray and Bentley, general partners; Benjamin Franklin Federal Savings and Loan Assoc. (also later dismissed), The Oregon Bank, United States National Bank of Oregon and National Video, Inc., lenders with an interest in the Skyport property. The trial court entered judgment only against Skyport and the three general partners for $100,185.71, but against Skyport and all third-party defendants for costs and disbursements. Only Skyport, Gray, Au and Bentley appeal that judgment.

In its counterclaim for breach of an implied contract, defendant alleged that the culvert crossing served only plaintiff's property and that, for reasons of public health and safety, it could not remove that crossing without replacing it with a bridge; that plaintiff requested the work; that defendant performed it to plaintiff's benefit; and that the reasonable value of its services is $105,185.71. After evidence was adduced before a jury relating to the counterclaim for breach of an implied contract, plaintiff moved for a directed verdict, arguing that the express contract provision, covering "precisely the circumstances as to which [defendant] now sues [plaintiff]," precluded the claim. The court granted that motion on the ground that defendant's claim was for breach of an express contract. After dismissing the jury, the court went on to hold that defendant had perfected its statutory lien and entered a judgment for defendant in the amount of $100,185.71 and a judgment foreclosing its lien for that amount. We review plaintiff's appeal from that judgment *de novo*.

The principal issue on plaintiff's appeal is whether defendant was entitled to a lien under the provisions of ORS 547.410 *et seq*. Although the contract language might be broader than the language in the lien statutes, defendant's only allegation of breach of the contract is limited to plaintiff's refusal to remove the obstruction, as required by ORS 547.415. Furthermore, the contract could not give defendant the right to a lien to recover the cost of the bridge, unless the statute authorizes a lien for that work.

ORS 547.410 provides, in part:

"(1) Whenever the engineer or secretary of such a drainage district notifies the supervisors that any ditch, lateral, drain, canal, slough, waterway or conduit is less efficient, by reason of the failure of the owner of the premises upon which it is situated to repair, clean or grade the same, the board of supervisors shall serve or cause to be served upon such owner * * * a notice in writing notifying the owner or occupant of the clogged or obstructed condition of the ditch, lateral, drain, canal, slough, waterway or conduit."

ORS 547.415 provides, in part:

"If the owner * * * of the premises upon which the clogged or obstructed * * * slough * * * is situated fails for 10 days after

being notified of the existence of such clogged or obstructed condition, to repair, clean or grade the * * * slough * * * or remove the obstruction therefrom, the board * * * shall immediately repair, clean or grade the same and cause it to be promptly placed in a proper and efficient condition."

Finally, ORS 547.420 provides that a district may recover its reasonable costs for curing the condition:

"Upon completion of the work the board of supervisors shall cause to be filed with the county clerk an itemized statement of the expense necessarily incurred in the repair, grading or cleaning of the * * * slough * * *. The amount of the charges and expenses * * * shall constitute a first lien upon the lands or premises, except as to taxes."

■■ Generally, statutory liens are strictly construed. In order to be entitled to a statutory lien, a claimant must comply with the statutory conditions for the creation of the lien. *Sun Solutions, Inc. v. Brandt*, 300 Or 317, 320-21, 709 P2d 1079 (1985); *Ward v. Town Tavern et al*, 191 Or 1, 14, 228 P2d 216 (1951). Although defendant gave plaintiff the 10-day notice required by ORS 547.415, the notice did not require plaintiff to construct a free-standing bridge after removing the culverts. Apparently, defendant realized that it could not lawfully make that demand; a lien may not include items that are not specifically made lienable by the statute.

Defendant has the power under ORS 547.415 to repair, clean or grade a slough, if the responsible party fails to do so within 10 days after notice. It may then assert a lien on the abutting property for the costs expended in performing that work. However, construction of a bridge does not fall within the authority granted defendant to repair, clean or grade a slough. That the construction of a bridge was not intended to give rise to a lien is also evidenced by the 10-day notice to repair provision; it is highly unlikely that a bridge over a slough could be constructed in 10 days. We conclude that, even though defendant might have had authority under other statutes to construct a bridge, it was not authorized under ORS 547.410 to do that as part of clearing the slough; therefore, the lien statutes on which it relies do not authorize it to claim a lien on plaintiff's property to recover its bridge-building costs under ORS 547.420. In short, the cost of

constructing a bridge over the slough is not lienable,[3] regardless of whether the contract required plaintiff to build it.

Plaintiff also assigns as error the court's failure to hold the charge against it to be an unconstitutional assessment. We need not address that question, because defendant did not attempt to use the assessment procedure, ORS 547.550, and because the case was not tried on that theory. *See Hill v. Mayers*, 104 Or App 629, 632, 802 P2d 694 (1990), *rev den* 311 Or 187 (1991); *see also Hazelwood Water Dist. v. First Union Management*, 78 Or App 226, 229 n 2, 715 P2d 498 (1986).

Defendant cross-appeals, assigning error to the dismissal of its implied contract claim. This aspect of the case has been complicated for two reasons. First, defendant did not allege a separate claim for breach of the express contract, presumably because the contract did not expressly require plaintiff to replace the culverts with a bridge. Rather, defendant alleged a claim for damages based on an implied contract, which both parties have argued as a claim for restitution. Second, the court directed a verdict on the claim for "restitution," because there was an express contract covering plaintiff's obligations, which was a "viable, valid and enforceable contract." Later, in deciding defendant's lien claim, the court found that plaintiff had breached that contract and awarded defendant $100,185.71 as damages, even though defendant had not made a claim for breach of the express written contract, except by alleging in its lien claim that plaintiff breached the contract by failing to remove the culverts. That breach did not support the amount of the judgment or the judgment foreclosing defendant's statutory lien in the amount of the money judgment. The only lien to which defendant was entitled under the contract and the law does not include the cost of building a bridge.

After the trial court dismissed defendant's counterclaim for breach of implied contract (or quasi-contract or restitution, however it might be properly characterized), the only issue was whether defendant was entitled to a lien for the cost of removing the culvert and the earth fill and building a

---

[3] Defendant does not argue that it is entitled at least to a lien for the cost of removing the culverts and the earth fill. *See Ward v. Town Tavern et al, supra.*

bridge. Clearly, it was not entitled to a lien for all of that, and defendant has not claimed that it is at least entitled to a lien for the cost of removing the culverts and the earth fill. Accordingly, it is not entitled to a judgment foreclosing its statutory lien. Because defendant had not alleged a separate claim for breach of the express contract, the judgment for damages for breach of contract was only incidental to the judgment foreclosing the lien.

■     Defendant does not dispute the existence of an express, enforceable contract; therefore, it cannot rely on an implied contract, as it has alleged. *Kashmir v. Patterson*, 289 Or 589, 616 P2d 468 (1980). Defendant does not dispute that proposition of law; instead, it argues that restitution is precluded only when the other party's contractual obligation is to pay money, not when the contract provides for the exchange of services. Even if that doubtful distinction exists, it is not applicable here, because the trial court found that the parties had contemplated that it would be necessary ultimately to replace the culverts with a bridge. It concluded that plaintiff "violated its contractual and statutory duties and that the contract did not restrict defendant's alternative to a like kind replacement of the culvert with other culverts." The court's conclusion that plaintiff's contractual obligations were the same as its statutory obligations was correct; however, it erroneously concluded that the statutory lien covered the cost of constructing the bridge and entered judgment against plaintiff for the amount claimed as a lien. Given that finding and conclusion, it is apparent that the court concluded that there is an express, enforceable contract and that defendant's action is for breach of that contract and foreclosure of the lien, not for some other remedy based on an implied-in-law contract.[4] The court did not err in directing a verdict on defendant's claim for breach of implied contract or restitution.

On appeal, judgment for defendant Multnomah County Drainage District No. 1 reversed; on cross-appeal, affirmed.

---

[4] Although defendant could have pled alternative theories of express contract and *quantum meruit*, the *quantum meruit* claim would have been properly stricken, once the existence and enforceability of the contract were conceded. *See Kashmir v. Patterson, supra.*